# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **WELLS FARGO BANK NORTHWEST, N.A., as TRUSTEE OF THE HVBFF LIFE RECEIVABLES EUROTRUST,** | Civil Action No. 10-1327 (FLW) |
| Plaintiff, | |
| v. | |
| **AMERICAN GENERAL LIFE INSURANCE CO.,** | **OPINION AND ORDER ON PLAINTIFF'S APPLICATION FOR LEAVE TO AMEND THE COMPLAINT** |
| Defendant. | |
| v. | |
| **HVBFF LIFE RECEIVABLES EUROTRUST, et al.,** | |
| Third-Party Defendants. | |

Presently before the Court is an application for leave to amend the Complaint, brought by Plaintiff, Wells Fargo Bank Northwest, NA, as trustee for HVBFF Life Receivables Eurotrust, ("HVBFF") [Docket Entry No. 57].  HVBFF seeks to assert additional factual allegations, as well as five new causes of action for negligent representation, violation of New York General Business Law § 349, promissory estoppel, equitable estoppel and unjust enrichment, and also seeks to revise its prayer for relief to request consequential, punitive and exemplary damages, as well as attorneys' fees and interest.  HVBFF's Brief in Support of Motion for Leave to Amend (hereinafter "HVBFF Brief") at 2 [Docket Entry No. 57].  HVBFF states that all parties except Defendant American General Life Insurance Company ("American General") have consented to

1

the proposed Amended Complaint (hereinafter, the "Amended Complaint"), attached to the Declaration of David King as Exhibit A.  [Docket Entry No. 58-1].  American General opposes the application, arguing that HVBFF's proposed amendments are futile because each fails to state a claim for which relief can be granted as a matter of law.  American General's Brief in Opposition to the Motion for Leave to Amend (hereinafter "AmerGen Opp Brief") [Docket Entry No. 62.].  HVBFF submitted a reply brief, providing further support for its proposed amendments.  HVBFF's Brief in Further Support of Motion for Leave to File an Amended Complaint (hereinafter "HVBFF Reply") [Docket Entry No. 63].

The Court has considered the application based on the papers submitted, without oral argument, pursuant to Fed. R. Civ. P. 78.  For the reasons set forth below, HVBFF's request for leave to amend is GRANTED in part and DENIED in part.

I.   **Relevant Facts**[1]

On or about February 26, 2006, American General issued a life insurance policy for Ms. Valeria Schwarz ("the Policy") with a standard death benefit of $4.5 million.  Amended Complaint ¶ 8.  Ms. Schwarz, a New York resident, was over 80 years old at the time of issuance.  Amended Complaint ¶¶ 8, 66.  The Policy included a provision which expressly barred the insurer from contesting the validity of the policy more than two years after issuance.  Amended Complaint ¶ 9.  According to the proposed Amended Complaint, both New York and New Jersey law impose the same prohibition on contesting the validity of a policy more than two years after issuance.  Amended Complaint ¶ 9.  The contestability period for this Policy lapsed on

---

[1]For purposes of this application, the Court accepts all facts in the proposed Amended Complaint as true.  Travelers Indem. Co., v Dammann & Co., Inc., 592 F. Supp.2d 752 (D.N.J. 2008).

2

or about February 28, 2008.  Amended Complaint ¶ 10.

Third Party Defendant The Valeria Schwarz Irrevocable Life Insurance Trust ("the Trust") was established by Ms. Schwarz to own the American General Policy.  Amended Complaint ¶ 11.  On or about May 21, 2008, the Trust elected to sell the Policy to Third Party Defendant Legacy Benefits Corporation ("LBC"), an experienced life settlement provider. Amended Complaint ¶ 11.

After the purchase agreement was executed, LBC requested a verification of coverage from American General to facilitate the transaction between LBC and the Trust.  Amended Complaint ¶ 12.  HVBFF contends that "American General was required by law to advise whether it was pursuing or intended to purse an investigation regarding the validity of the American General Policy:

> (2) The insurer shall respond to a request for verification of coverage submitted by a viatical settlement provider not later than 30 calendar days after the date the request is received.  The request for verification of coverage shall be made on a form approved by the commissioner.  The insurer shall complete and issue the verification of coverage or indicate in which respects it is unable to respond.  *In its response, the insurer shall indicate whether, based on the medical evidence and documents provided, the insurer intends to pursue an investigation at that time regarding the validity of the insurance contract.*

N.J. Stat. § 1713:3013-9a.(2) (2010) (emphasis added); *cf.* N.Y. Ins. Law § 7813(b) (2010)." Amended Complaint ¶ 12 (emphasis in original).

In response to LBC's request, on or about May 28, 2008, American General provided a "Verification Of Coverage Form," in which it represented that the Policy was "not currently contestable.  American General also represented that the policy was in-force, assignable and

3

transferable." Amended Complaint ¶ 13.  The verification did not disclose any intent to investigate the validity of the Policy at a later date, and HVBFF asserts that American General was in fact barred from later contesting the validity under the terms of the Policy and under applicable state law.  Amended Complaint ¶ 13.

In May 2008, LBC entered into negotiations to sell the Policy to HVBFF.  Amended Complaint ¶ 14.  As part of the negotiations, LBC provided HVBFF with the verification form American General had given to LBC.  Amended Complaint ¶ 14.  HVBFF states that it relied on the representations American General made in the verification.  Amended Complaint ¶ 15.  The sale to HVBFF was finalized in June 2008, and American General confirmed the change of ownership and beneficiary on June 26, 2008.  Amended Complaint ¶¶ 16-17.  On the same day, LBC advised HVBFF that American General had confirmed in a telephone conference that the information contained in the earlier Verification of Coverage remained unchanged in all material respects.  Amended Complaint ¶ 18.

Following its purchase of the Policy, HVBFF paid all premiums as they came due. Amended Complaint ¶ 19.  On January 20, 2009, HVBFF paid an advance premium payment in the amount of $351,000, for the Policy period beginning February 26, 2009.  Amended Complaint ¶ 20.  American General accepted those payments without protest.  Amended Complaint ¶ 19.  Indeed, at no point until April 2009, when HVBFF sought to collect the benefits under the Policy, did American General in any way challenge its validity or HVBFF's status as owner or beneficiary.  Amended Complaint ¶ 21.

Ms. Schwarz died on February 12, 2009.  Amended Complaint ¶ 22.  Soon thereafter, HVBFF provided American General with notice of Ms. Schwarz's death and requested a refund

4

of the advance premium payment.  Amended Complaint ¶ 23.  Although American General acknowledged receipt of the documents establishing Ms. Schwarz' death and HVBFF's request for a refund of the advanced payment, and despite several requests, American General did not make the requested refund.  Amended Complaint ¶ 24-27.

As a result, on or about September 15, 2009, HVBFF filed the instant action, seeking payment of the benefits alleged to be due under the Policy, along with a return of the pre-paid premiums.  HVBFF Brief at 4.  HVBFF now seeks to add various new causes of action to the Complaint, along with additional damages claims.  HVBFF Brief at 2.

## II.    Standard of Review

Under Rule 15(a)(1) of the Federal Rules of Civil Procedure, a party may amend its pleading once as a matter of course within a specified limited time.  Id.  After such time has passed, a party must seek the written consent of the opposing party or leave of the court.  Fed. R. Civ. P. 15(a)(2).  Under Rule 15(a)(2), leave should be freely given, and the Third Circuit has taken a liberal approach to allowing amendments under this rule so that claims may be decided on the merits and not on any technicality.  Fed. R. Civ. P. 15(a)(2); WHY ASAP, LLC v. Compact Power, 461 F. Supp.2d 308, 311 (D.N.J. 2006), citing Dole v. Arco Chemical Co., 921 F.2d 484, 487 (3d Cir. 1990).  Absent "undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment," the court should grant leave to amend.  WHY ASAP, 461 F. Supp.2d at 311, citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

An amendment is futile when it fails to state a claim upon which relief may be granted. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).  The standard of review for futility is therefore the same as that for a motion to dismiss under Fed. R. Civ. P.

12(b)(6).  See id.; Massarsky v. General Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983).  When

faced with a motion to dismiss for failure to state a claim, the court conducts a two step analysis.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  First, the factual elements are

separated from the legal elements of the claim.  Fowler, 578 F.3d at 210-11.  The court must

accept the factual elements alleged in the well-pleaded complaint as true, but may disregard any

legal conclusions.  Id., 578 F.3d at 210-11; Travelers Indem. Co., v Dammann & Co., Inc., 592

F.Supp.2d 752, 764 (D.N.J. 2008).

Second, the court must determine if the facts alleged are sufficient to show a "plausible

claim for relief."  Fowler, 578 F.3d at 210, quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1955

(2009).  A plausible claim is one which "allows the Court to draw the reasonable inference that

the defendant is liable for the misconduct alleged."  Fowler, 578 F.3d at 210-11, quoting Iqbal,

129 S.Ct. at 1948.  This is not to say that a plaintiff's claim should be dismissed if it seems

unlikely to prevail on the merits, as the court's purpose is to determine whether the complaint

provides enough facts "to raise a reasonable expectation that discovery will reveal evidence of

the necessary element[s]."  Hobson v. St. Luke's Hospital and Health Network, 735 F.Supp.2d

206, 211 (E.D. Pa. 2010), quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.

2008).  "Ultimately, this two-part analysis is 'context-specific' and requires the court to draw on

'its judicial experience and common sense' to determine if the facts pled in the complaint have

'nudged [plaintiff's] claims' over the line from '[merely] conceivable or [possible] to plausible.'"

Hobson, 735 F.Supp.2d at 211 (E.D. Pa. 2010), quoting Fowler, 578F.3d at 211.

## III.   Analysis

HVBFF seeks to add five new causes of action and to revise its prayer for relief to include

additional damages theories.[2]  American General opposes the proposed amendments, arguing

they are futile.  The Court addresses each proposed new count in turn, as well as the new

damages theories, as pled in the Amended Complaint.[3]

A.     **Negligent Misrepresentation**

Under New York law, the elements of negligent misrepresentation include:

> (1) the defendant has a duty, as a result of a special relationship, to
> give correct information; (2) the defendant made a false
> representation that he or she should have known was incorrect; (3)
> the information supplied in the representation was known by the
> defendant to be desired by the plaintiff for a serious purpose; (4)
> the plaintiff intended to rely and act upon it; and (5) the plaintiff
> reasonably relied on it to his or her detriment.

Hydro Investors, Inc., v. Trafalgar Power Inc., 227 F.3d 8, 20 (2d Cir. 2000).  The elements

under New Jersey law are similar, if not more concisely put: "[t]o establish a claim for negligent

misrepresentation, a plaintiff must show an incorrect statement, negligently made and justifiably

relied on, which results in economic loss."  Konover Construction Corp. v. East Coast

Construction Services Corp., 420 F. Supp.2d 366, 370 (D.N.J. 2006), citing McClellan v. Feit,

376 N.J. Super. 305, 313 (App. Div. 2005).

HVBFF argues that it adequately alleges each element of negligent misrepresentation.

HVBFF contends that in addition to a statutory duty to provide correct information, American

---

[2]HVBFF also seeks to include additional factual allegations, which American General did
not oppose.  The Court will therefore allow HVBFF to amend the Complaint to include the
factual allegations as pled in the proposed Amended Complaint.

[3]The parties raise an issue as to whether New York or New Jersey law governs these
causes of action.  Because there is substantial overlap between the laws of the two jurisdictions,
the parties argue their positions under both.  This Court does not decide the choice of law issue
on this motion but finds that regardless of which law applies, the outcome is the same.

General had a duty to provide correct information that arose from American General's awareness that HVBFF would rely on its verification when it purchased the Policy.  HVBFF Brief at 8. HVBFF asserts that American General did not provide correct information, but instead made false representations through its "agreement, promises, statements, acts, omissions and conduct," regarding its intention to investigate the Policy and the Policy's status as "valid, enforceable and non-contestable."  HVBFF Brief at 8.  HVBFF claims that American General knew HVBFF, "like any other bona fide purchaser, would rely on its promises and representations in its verification of coverage and [HVBFF] would be injured if those promises and representations were false."  HVBFF further alleges that it in fact did rely on the representation and was harmed as a result.  HVBFF Brief at 9.

American General contests only the allegation that it made a misrepresentation. AmerGen Opp Brief at 14-16.  First, American General sets out the legal definition of misrepresentation, citing several cases which held that a misrepresentation must be of past or existing fact, and that it cannot be a simple failure to perform a promised future activity. AmerGen Opp Brief at 14-15.  American General argues that HVBFF cannot allege "that American General's response to the request for verification of coverage was incorrect or false at the time it was made," as "[i]t was not until a death claim was submitted upon Valeria Schwarz' death in February 2009, that a routine *claim* investigation revealed the material misrepresentations contained in the Application for the Policy."  AmerGen Opp Brief at 15 (emphasis in original).  Thus, "[t]here is no allegation that American General was then or then intended to investigate or contest the Policy, at the time it responded to [LBC's] request for verification of coverage in June 2008."  AmerGen Opp Brief at 15.

American General is correct that an "alleged misrepresentation must be factual in nature and not promissory or relating to future events that might never come to fruition." Hydro Investors, 227 F.3d at 20-21.  This premise does not, however, operate as an automatic embargo on claims for negligent misrepresentation that rest on statements about future activity.  Instead, if "'a promise is given and the promisor knows at the time of promising that he has no intention of fulfilling it, the promise will constitute a misstatement of present fact and may support an allegation of fraud.'" Automated Salvage Transport, Inc. v. NV Koninklijke Knp Bt., 106 F. Supp.2d 606, 623 (D.N.J. 1999), quoting Lo Bosco v. Kure Engineering Ltd., 891 F. Supp. 1020, 1031 (D.N.J. 1995).  To distinguish between a promise of  future action and the misrepresentation of existing intention, courts look for an "indication that the party that allegedly made the misrepresentation 'did not intend to honor its commitment at the time [the alleged misrepresentation] was made.'" Transit Management, LLC v. Watson Industries, Inc., 803 N.Y.S.2d 860, 863 (N.Y. App. Div. 2005), quoting Margrove Inc., v. Lincoln First Bank of Rochester, 388 N.Y.S.2d 958, 958 (N.Y. App. Div. 1976).

HVBFF alleges that "[o]n information and belief, American General has engaged in a practice or policy of (1) investigating the veracity of representations made in connection with the application for, and underwriting of, life insurance policies..., and (2) denying benefits due under life insurance policies..., after ... (ii) the expiration of the policy's contestability provision, and/or (iii) providing verification of coverage that the policy is valid, assignable and not currently contestable to bona fide purchasers for good and valuable consideration."  Amended Complaint ¶¶ 35-36 (emphasis in original).  Taken as true for the purposes of this application, such a practice or policy is an indication that at the time when it made the verification, American

General falsely stated its intentions with regard to its future investigation.  The Court finds

HVBFF has alleged sufficient facts to state a plausible claim of negligent misrepresentation.

**B.      Violation of New York General Business Law § 349**

Section 349 of the New York General Business Law ("GBL") provides a private right of

action to individual consumers with regard to "deceptive acts or practices in the conduct of any

business, trade or commerce or in the furnishing of any service in [the State of New York]."

GBL § 349(h) (McKinney's 2004).  The private right added to the consumer protection power of

the New York Attorney General, and was enacted to empower consumers by "even[ing] the

playing field in their disputes with better funded and superiorly situated fraudulent businesses."

Teller v. Bill Hayes, Ltd., 630 N.Y.S.2d 769, 774 (N.Y. App. Div. 1995).

The New York Court of Appeals specifically addressed the reach of the Act in Oswego

Laborers' Local 214 Pension Fund v. Marine Midland Bank, 647 N.E.2d 741 (N.Y. 1995).  The

court in Oswego examined the legislative history of GBL § 349, and concluded that, "[a]s shown

by its language and background, section 349 is directed at wrongs against the consuming public."

Id. at 744.  Thus, to state a claim for a violation of GBL § 349, "a plaintiff must allege (1) a

deceptive consumer-oriented act or practice which is misleading in a material respect, and (2)

injury resulting from such act."  Exxonmobil Inter-America, Inc. v. Advanced Information

Engineering Services, Inc., 328 F. Supp.2d 443, 447 (S.D.N.Y. 2004).  The threshold question is

whether the alleged conduct is "consumer-oriented." Id. at 447.  The conduct at issue does not

have to be a repeating pattern of behavior, but the party alleging the conduct  must demonstrate

that the practice has "a broader impact on consumers at large."  Oswego, 647 N.E.2d at 744.

Accordingly, the New York Court of Appeals has held that "[p]rivate contract disputes, unique to

10

the parties . . .  would not fall within the ambit of the statute." Id.

Traditionally, GBL § 349 has been applied to consumer sales transactions where the amount in controversy is relatively small.  Teller, 630 N.Y.S.2d at 774; see also New York University v. Continental Ins. Co., 662 N.E.2d 763, 771 (N.Y. 1995) (finding that the denial of commercial liability coverage in a complex insurance arrangement was not the "'modest' type of transaction the statute was primarily intended to reach").   "The typical violation contemplated by the statute involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods usually by way of false and misleading advertising." Genesco Entertainment v. Koch, 593 F.Supp. 743, 751 (S.D.N.Y. 1984).  The statute itself evidences its modest intent.  Monetary damages are limited to the greater of fifty dollars or actual damages. GBL § 349(h).  Additionally, courts may, in their discretion, "increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars," if the conduct at issue is found to be a willful or knowing violation.  Id.

When more complex claims are asserted under GBL § 349, courts have looked to the identity of the parties, their sophistication and experience, and the contract type and amount to determine whether the statute applies.  For example, in Genesco, a dispute arose between a large concert promoter and the City of New York over the leasing of Shea Stadium.  The court rejected the claim under GBL § 349, finding "transactions involving complex arrangements, knowledgeable and experienced parties and large sums of money . . . are different in kind and degree from those that confront the average consumer who requires the protection of a statute against fraudulent practices." Id., 593 F.Supp. at 752; see also New York University v. Continental Ins. Co., 662 N.E.2d at 770 (finding an insurance provider was not liable under GBL

§ 349 where the underlying insurance deal involved "complex insurance coverage and proof of loss in which each side was knowledgeable and received expert representation and advice.").

HVBFF and American General disagree over whether the alleged conduct by American General is consumer-oriented under the statute. HVBFF claims that "American General is engaged in consumer-oriented conduct that has a profound, detrimental effect on the New York life settlement industry," setting forth various ways that the alleged practice affects the industry at large, including not only the bona fide purchasers of the policies, but also the New York residents to whom the policies are issued. HVBFF Brief at 10-11. Essentially, HVBFF asks the Court to find that those engaging in the life settlement industry are consumers for purposes of triggering the protections of GBL § 349.

In contrast, American General argues that HVBFF's proposed Amended Complaint details only a "private contract dispute unique to the parties." AmerGen Brief at 11. For support, American General cites to Kramer v. Lockwood Pension Services, Inc., 653 F. Supp.2d 354, 385 (S.D.N.Y. 2009), a case concerning the rescission of a life insurance policy and refusal to pay benefits due under the policy. There, the court found the alleged conduct was "not properly considered 'consumer-oriented' where . . . the parties include sophisticated insurance brokers and not ordinary consumers to whom the statute is directed." AmerGen Brief at 11-12.

Both sides cite to Phoenix Life Ins. Co. v. The Irwin Levinson Ins. Trust II, 2009 WL 497318 (N.Y. Sup. Ct. Feb. 19, 2009), each saying that it supports their position on the GBL claim. That case shares similar facts and raises issues very similar to those raised here. There, the court allowed the case to go forward despite the fact that "it appears that defendants are relying on a consumer protection statute to defend a practice that the very same statute was

12

intended to guard against." <u>Phoenix</u>, 2009 WL 497318 at *9.  The court noted that its role is "ordinarily limited to determining whether the complaint states a cause of action" based upon what can reasonably be implied from the pleading.  <u>Phoenix</u>, 2009 WL 497318 at *6.  The court concluded that "at this pre-discovery stage, and in light of the limited nature of the <u>CPLR</u> 3211(a)(7) relief sought by plaintiff, it would be improvident for this Court to determine the apparent *merit* of plaintiff's claims.  <u>Phoenix</u>, 2009 WL 497318 at *9 (emphasis in original).

Applying the facts as pled to the language and purpose of the statute, the Court finds that this dispute is not the type envisioned under GBL § 349, nor are HVBFF and American General the types of parties the statute was designed to protect.  As pled in the proposed amended pleading, both parties are experienced and sophisticated players in the life settlement industry, of relatively equal bargaining power, and involved in a complex commercial undertaking.  This is hardly the "modest" type of transaction contemplated in the Act or the cases interpreting it.

In addition, the Court is mindful of the apparent divergence between the New York district court in <u>Kramer</u> and the New York supreme court in <u>Phoenix</u>.  A review of the standard applied by the court in <u>Phoenix</u>, however, makes the reason for that divergence clear.  The <u>Phoenix</u> court was not applying the <u>Iqbal</u> standard, which binds this Court in deciding the present application.  As set forth in the Standard of Review section, <u>supra</u>, this Court must do more than merely determine whether a cause of action can be implied from the bare allegations of the complaint but must actually consider whether that cause of action is plausible, given the factual allegations of the pleading.  This Court finds that the proposed Amended Complaint has not met that standard with regard to the GBL count, and the request to amend the complaint to add a claim under § 349 is therefore denied.

13

C.      **Promissory Estoppel**

Promissory estoppel is intended to avoid injustice where a promisor induces action but escapes enforcement when he fails to fulfill his promise.  See E.A. Coronis Associates v. M. Gordon Construction Co., 90 N.J. Super. 69, 74-77 (App. Div. 1966).  The elements are substantially the same under both New York and New Jersey law, and require: "(1) a clear and definite promise; (2) the promise was made with the expectation that the promisee will rely on it; (3) the promisee in fact reasonably relies on the promise; and (4) the promisee suffers a definite and substantial detriment as a result of the reliance such that the promise should be enforced to avoid injustice."  Automated Salvage Transport, 106 F. Supp.2d at 621-22; see also Forman v. Guardian Life Ins. Co. of America, 908 N.Y.S.2d 27, 31 (N.Y. App. Div. 2010) (finding that promissory estoppel was properly pled where "[t]he pleadings allege that defendants made a clear and unambiguous promise . . ., that plaintiffs reasonably relied on this promise . . ., and that they were injured by defendant's failure to [uphold their promised activity].")

Not all expressions of future intention constitute a promise, and the threshold question is whether the promise made was the type to which promissory estoppel may be applied.  A promise must be a representation that relates to the intended abandonment of an existing right.  See Friedman v. Tappan Dev. Corp., 22 N.J. 523, 537 (1956).  To be actionable, the promise must be more than a general statement; it must be "sufficiently clear and definite."  In re Tri-State Armored Services, Inc., 2007 U.S. Dist. LEXIS 29794 *41-42 (D.N.J. April 23, 2007), citing Automated Salvage Transport, 106 F.Supp.2d at 622; see also The Malaker Corp. Stockholders Protective Committee v. First Jersey National Bank, 163 N.J. Super. 463, 479-80 (App. Div. 1978) (finding a "clear and definite promise" the sine qua non for the applicability of

14

promissory estoppel).  There are, however, no magic words or phrases that make a promise clear and definite.  Courts instead look to the degree of definition in the alleged promise.  See Aircraft Inventory Corp. v Falcon Jet Corp., 18 F.Supp.2d 409, 416 (D.N.J. 1998) (finding an oral promise for the sale of an airplane was not clear and definite where "[d]etails such as warranties, disclaimers, delivery, taxes, and allocation of risk of loss were not established nor even discussed,"); see also Malaker Corp., 163 N.J. Super. at 479-80 (finding an alleged promise for a bank loan, where neither amount nor collateral was specified, was not sufficiently clear or definite as to invoke promissory estoppel).

HVBFF claims that American General made two distinct promises.  First, the American General Policy includes a provision that it may not be contested after two years from its issuance "without qualification or exception."  HVBFF Brief at 13.  Second, American General provided a verification of coverage in which it "unambiguously represented that the Policy was not contestable, and moreover, failed to disclose its intentions to investigate the Policy's validity despite a statutory obligation to do so."  HVBFF Brief at 13.  HVBFF argues that these statements constitute promises as to the status of the Policy, knowing that HVBFF, as a bona fide purchaser, would rely on the promises when deciding whether to buy the Policy.  HVBFF Brief at 13.  HVBFF further alleges that it did in fact rely on those promises, and that it has suffered substantial harm as a result of American General's refusal to pay the benefits due and its refusal to refund the advanced premium payment.  HVBFF Brief at 13.

American General disputes that it made any clear and definite promise that it "would not investigate the Policy at the time of claim as per its express right contained in the Policy itself," or that it "promise[d] to never investigate the Policy or contest it."  AmerGen Opp Brief at 16.

15

The Court finds that HVBFF has alleged that American General made representations as to its rights, ability, and intention to contest the Policy and these constitute promises of its future action or inaction. At this early stage of the litigation, HVBFF has provided sufficient detail of the manner and form in which the alleged promises were made.

American General next argues that even if its representations are deemed promises, any reliance on them by HVBFF was unreasonable. AmerGen Brief at 16. Quoting the Third Circuit, American General reasons that "'reliance upon a mere expression of future intention cannot be reasonable because such expressions do not constitute a sufficiently definite promise.'" AmerGen Opp Brief at 16, quoting In re Phillips Petroleum Sec. Litig., 881 F.2d 1236, 1250 (3d Cir. 1989) (internal quotations omitted). This Court has already found that HVBFF has sufficiently alleged that American General made promises as to the Policy, not just "mere expressions" of future intention. The Court finds that HVBFF has sufficiently pled that its reliance on the statements made was reasonable.

Accordingly, the Court will allow HVBFF to amend its Complaint to add a claim for promissory estoppel.

### D.    Equitable Estoppel

Equitable estoppel is another remedy designed to prevent injustice where one party relies to its detriment on the statements of another. K. Bell & Associates, Inc. v. Lloyd's Underwriters, 827 F.Supp. 985, 989 (S.D.N.Y. 1993). Under New York law, "'in order to impose estoppel upon a party, three elements must be present: (1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts.'" DiLascio v. Tilden Glen Head, Inc., 894 N.Y.S.2d

16

203, 204-05 (N.Y. App. Div. 2010), quoting Hayden v. S&W Meat & Poultry, 634 N.Y.S.2d

226, 227 (N.Y. App. Div. 1995).  In turn, the party asserting estoppel must also demonstrate a

lack of knowledge of the real facts, reliance on the conduct of the misrepresenting party, and a

prejudicial change in position.  DiLascio, 894 N.Y.S.2d at 205; Coggins v. County of Nassau,

615 F.Supp.2d 11, 22 (E.D.N.Y. 2009).  New Jersey law requires a similar showing: "[t]o state a

claim for equitable estoppel, a plaintiff must establish that the defendant made a

misrepresentation or concealment of facts; that such misrepresentation or concealment of

material fact was done with the intention or expectation that it would be acted upon by the

plaintiff; and that the plaintiff reasonably and justifiably relied upon the misrepresentation or

concealment to [its] detriment."  De Franco v. AT&T Corp., 2007 WL 2302324 *3 (N.J. App.

Div. Aug. 14, 2007), citing Eileen T. Quigley, Inc. v Miller Family Farms, Inc., 266 N.J. Super.

283 (App. Div. 1993).

      The purpose of equitable estoppel is not to impose punitive measures for a false

representation; it is designed to prevent one party from "denying his own expressed or implied

admission which has in good faith been accepted and acted upon by another."  Airco Alloys Div.

v. Niagra Mohawk Power Corp., 430 N.Y.S.2d 179, 187 (N.Y. App. Div. 1980).  The admission

does not have be intentionally false or misleading, but instead may be conduct "which amounts to

a false representation or concealment of facts, or at least, which is calculated to convey the

impression that the facts are otherwise than, and inconsistent with, those which the party

subsequently seeks to assert."  Coggins, 615 F.Supp.2d at 22, quoting BWA Corp. v. Alltrans

Express USA Inc, 493 N.Y.S.2d 1, 6 (N.Y. App. Div. 1985); see also Harr v. Allstate Ins. Co., 54

N.J. 287, 308 (1969) (finding that even an innocent error as to the scope of coverage, leading to a

representation that it was broader than it actually was, could give rise to an estoppel).

Here, HVBFF claims American General represented the Policy was no longer contestable in the verification and by the terms of the Policy itself.  HVBFF Reply at 9; Amended Complaint ¶ 87.  HVBFF asserts American General made these representations with the intent that HVBFF would rely on them, which it did.  HVBFF Reply at 9; Amended Complaint ¶¶ 90, 92.  HVBFF further claims American General has an actual practice of verifying policies as non-contestable and transferable, and then later investigating those policies, and that HVBFF was unaware of that practice when it purchased the Policy.  HVBFF Reply at 9; Amended Complaint ¶¶ 89, 90.

American General argues a claim for equitable estoppel is futile because HVBFF cannot point to a false representation showing its intent to investigate at the time it made the verification.  AmerGen Opp Brief at 18.  The Court has already found that the facts as pled sufficiently allege a misrepresentation.  See Section III.A., supra.  The intent or knowledge of making a false representation is inconsequential to the Court's analysis.

American General also argues that equitable estoppel cannot be used to create coverage where none exists.  AmerGen Opp Brief at 18-20.  American General asks the Court to find the Policy void ab initio as a result of misrepresentations contained in the application for the Policy and a lack of an insurable interest. AmerGen Opp Brief at 18-20.  The Court finds this argument premature.  At this stage of the proceedings, the question is whether the pleadings state a plausible claim upon which relief may be found, not whether a claim for equitable estoppel can actually be proven.  See K. Bell & Associates, 827 F.Supp. at 989 (finding that while the defendant's argument may prevent a court from ultimately applying estoppel, it does not prevent its assertion).

18

The Court finds the facts as pled in the proposed Amended Complaint are sufficient to allow the amendment to add a claim of equitable estoppel.

### E.    Unjust Enrichment

Unjust enrichment "rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." U.S. Bank National Association v. Hylton, 403 N.J. Super. 630, 642 (Chan. Div. 2008), citing Associates Commercial Corp. v. Wallia, 211 N.J. Super. 231, 243 (App. Div. 1986).  In New York, to succeed on a claim of unjust enrichment, a party must prove "(1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the [other party] to retain what is sought to be recovered." Corsello v. Verizon New York, Inc., 908 N.Y.S.2d 57, 78 (N.Y. App. Div. 2010), quoting Citibank, N.A. v. Walker, 787 N.Y.S.2d 48, 49 (N.Y. App. Div. 2004) (internal quotations omitted).  Under New Jersey law, to prove unjust enrichment a party must demonstrate that "(1) at the party's expense; (2) the other party received a benefit; (3) and that it would be unjust for that party to retain the benefit without paying for it." Manisco v. Brother International Corp., 627 F.Supp.2d 494, 505 (D.N.J. 2009), citing In re K-Dur Antitrust Litigation, 338 F.Supp.2d 517, 544 (D.N.J. 2004).  The party asserting unjust enrichment must also show that it expected something in return for its expenses and the failure of the return benefitted the defendant.  Manisco, 627 F.Supp.2d at 505.

HVBFF asserts it has pled sufficient facts to support a claim for unjust enrichment. HVBFF claims all premiums were paid on time and that American General accepted them without protest.  HVBFF Brief at 15.  It also claims American General verified the Policy was not contestable, and never indicated it would investigate the Policy until April 2009.  HVBFF

Brief at 15.  HVBFF states American General now refuses to pay the benefits due and has

withheld the bargained-for contractual rights.  HVBFF Brief at 15.  Furthermore, HVBFF paid an

advance premium payment of $351,000 for the policy period beginning February 26, 2009, which

American General accepted.  HVBFF Brief at 20.  Although Ms. Schwarz died on February 12,

2009, before the period began, American General has not refunded the advance premium

payment.  Amended Complaint ¶¶ 22, 27.

American General does not challenge HVBFF on any of the elements of unjust

enrichment.  Instead American General argues that the claim is futile since the parties have a

contractual relationship.  AmerGen Opp Brief at 20 (citing various cases which hold that a claim

for unjust enrichment cannot lie where there is an express written agreement).

Although the gravamen of HVBFF's complaint, even if amended, is still largely

contractual, quasi-contract claims may nonetheless be pled in the alternative to contract based

claims.  See Manisco, 627 F. Supp.2d at 505, citing In Re K-Dur, 338 F. Supp.2d at 554.  The

Court finds HVBFF has alleged sufficient facts to state a claim for unjust enrichment at this early

stage of the case.  HVBFF alleges American General has not refunded the advance premium

payment designated for a premium period beginning after the death of Ms. Schwarz.  The Court

finds this allegation alone could sustain a claim for unjust enrichment.  This Court will therefore

allow HVBFF to amend its complaint to add a claim for unjust enrichment.

### F.    Damages

HVBFF seeks to amend its prayer for relief to include a demand for consequential

damages, as well as punitive and exemplary damages on its GBL § 349 and breach of contract

claims, and prejudgment interest and attorneys' fees.

First, HVBFF seeks to add a claim for consequential damages.  "It is well settled that in breach of contract actions 'the nonbreaching party may recover general damages which are a natural and probable consequence of the breach.'"  Bi-Economy Mkt. v. Harleysville Ins. Co. of N.Y., 886 N.E.2d 127, 130(N.Y. 2008), quoting Kenford Co v. County of Erie, 537 N.E.2d 176, 178 (N.Y. 1989).  Consequential damages are "special" damages, and are recoverable in only limited circumstances.  Bi-Economy Mkt, 886 N.E.2d at 130, citing American List Corp. v. U.S. News & World Report, 549 N.E.2d 1161, 1164 (N.Y. 1989).  To assert a claim for consequential damages, the plaintiff must plead those damages were "within the contemplation of the parties as a probable result of the breach at the time of or prior to contracting."  Bi-Economy Mkt., 886 N.E.2d at 130, quoting Kenford, 537 N.E.2d at 178.

HVBFF "supports its claim for consequential damages by pleading that American General's above-mentioned actions, omissions and conduct are unreasonable, in bad faith, and a breach of its duty of good faith and fair dealing (as part of its causes of action for breach of contract), and by extensively detailing American General's bad faith in its Amended Complaint." HVBFF Brief at 16.  Although American General does not dispute these claims in its responsive submission, the Court must nonetheless consider whether this allegation is adequately pled.  The Court finds it is not.  While HVBFF has pled facts relating to the alleged bad faith conduct of American General, its proposed amended pleading does not allege any facts regarding consequential damages that were in the contemplation of the parties at the time the contract was made, as required for this claim.  The Court therefore finds that HVBFF has not alleged facts sufficient to support its amendment to add a claim for consequential damages, other than its general request for prejudgment interest, attorneys' fees, and costs, which the Court will allow to

21

proceed.

Next, HVBFF seeks to add a request for punitive damages on its breach of contract claims. HVBFF alleges that "American General engaged in bad faith conduct that is actionable as an independent tort (including negligent misrepresentations and fraudulent concealment), that its conduct is sufficiently egregious, directed at the public and part of a pattern because it is deceptive, intentional, flagrant, and a routine practice." HVBFF Reply at 13. American General argues that HVBFF has not pled facts sufficient to demonstrate its actions were reckless or malicious. AmerGen Brief at 21-23.

"Punitive damages are awarded to punish a Defendant who engages in morally reprehensible conduct and to deter the Defendant and others from engaging in similar conduct." Reiter Sales, Inc. v. Scovill Fasteners Inc., 2005 WL 2242846 *5 (N.Y. Sup. Ct. Sept. 8, 2005), citing Walker v. Sheldon, 179 N.E.2d 497, 498 (N.Y. 1961). They are, however, not typically recoverable in a private dispute arising out of a breach of contract. See, e.g., Polizzi Meats, Inc., v. Aetna Life & Casualty Co., 931 F. Supp. 328, 335 (D.N.J. 1996). The New York Court of Appeals has held that a party seeking to recover punitive damages in a contract action must plead the following elements: "(1) defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be . . egregious . . .; (3) the egregious conduct must directed to plaintiff; and (4) it must be part of a pattern directed at the public generally." New York University, 662 N.E.2d at 767 (internal citations omitted). Furthermore, courts in New York require the plaintiff to establish that the defendant's conduct involved "evil and reprehensible motives" or that it showed "wanton dishonesty as to imply criminal indifference to civil obligations." Reiter Sales, 2005 WL 2242846 at *5, citing Walker, 179 N.E.2d at 499. New

Jersey requires a similar showing.  See Pickett v. Lloyd's, 131 N.J. 457, 475-76 (1993) (finding that to sustain a claim for punitive damages on a breach of contract claim, there must be more than breach of a good faith obligation, and defendant's conduct must be wantonly reckless or malicious).

HVBFF asserts, without further argument, that American General's conduct is "sufficiently egregious," and relies on claims of bad faith conduct and negligent misrepresentation.  HVBFF Brief at 17; HVBFF Reply at 13.  As stated above, the alleged facts must show more than a breach of the good faith obligation, and instead must show conduct reaching towards criminal indifference.  HVBFF has not pled such facts, and therefore the Court will deny HVBFF's request to add a claim for punitive damages on the breach of contract claims.

Finally, given that the Court has denied HVBFF's request to amend to add a claim under GBL § 349, its claim for punitive damages based on this cause of action is similarly denied.

Accordingly, the Court having considered the submissions of the parties, and for the reasons stated above, and for good cause shown,

**IT IS** on this **19th** day of **May,**

**ORDERED** that HVBFF's application for leave to amend be and hereby is **GRANTED IN PART** and **DENIED IN PART**; and it is further

**ORDERED** that HVBFF has leave to amend the Complaint in accordance with this

23

Opinion and Order to include additional factual allegations as pled in the proposed Amended

Complaint, and claims for negligent misrepresentation, promissory estoppel, equitable estoppel,

and unjust enrichment, and it may also amend its request for relief to include prejudgment

interest, attorneys' fees, and costs; and it is further

**ORDERED** that the request to amend to assert a claim for a violation of the GBL § 349,

as well as consequential and punitive damages, is DENIED; and it is further

**ORDERED** that HVBFF shall file its Amended Complaint in accordance with this

Opinion and Order within ten days of the entry of this Order.

**LOIS H. GOODMAN**
**United States Magistrate Judge**

24